UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00558-RSE

Gennifer B.                                                                                      PLAINTIFF

VS.

MARTIN O'MALLEY,
*Commissioner of Social Security*[1]                                            DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

The Commissioner of Social Security denied Claimant Gennifer B.'s ("Claimant's")

application for disability insurance benefits and supplemental security income benefits. Claimant

presently seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Both

Claimant (DN 14; DN 15) and the Commissioner (DN 17) have filed a Fact and Law Summary.

Claimant did not file a reply brief. The Parties have consented, under 28 U.S.C. § 636(c) and Fed.

R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings

in this case, including issuance of a memorandum opinion and entry of judgment, with direct

review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 12).

### I. Background

Gennifer B. ("Claimant") applied for disability insurance benefits under Title II of the

Social Security Act and supplemental security income benefits under Title XVI of the Social

Security Act on January 18, 2019, alleging disability beginning on October 1, 2018. (Transcript,

hereinafter, "Tr." 128, 235, 242). She alleged disability based on "multiple rhythm disturbances,"

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.

anxiety, thyroid disease, and "postural orthostatic starchy." (Tr. 88). Claimant's application was denied by the State Agency Disability Determination Service at both the initial and reconsideration levels. (Tr. 144, 149).

At Claimant's request, Administrative Law Judge Steven Collins ("ALJ Collins") conducted a hearing in Louisville, Kentucky, on June 2, 2020. (Tr. 16, 181). Claimant and her counsel appeared by telephone.[2] (Tr. 40). An impartial vocational expert also participated in the hearing. (*Id.*). ALJ Collins issued an unfavorable decision on July 1, 2020. (Tr. 16). Applying the five-step sequential evaluation process promulgated by the Commissioner, 20 C.F.R. § 404.1520, ALJ Collins determined that, while Claimant had severe impairments of postural orthostatic tachycardia syndrome ("POTS"), hypertension, Hashimoto's disease, asthma, and obesity, she still retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with additional exertional, postural, and environmental limitations. (Tr. 24-25). When he evaluated Claimant's RFC, ALJ Collins discussed the state agency physician opinions, which opined that Claimant was "capable of performing a limited range of work . . . ." (Tr. 28). Under this RFC, ALJ Collins found Claimant was not under a disability, as defined in the Social Security Act, from October 1, 2018 through the date of his decision. (Tr. 31).

The Appeals Council declined Claimant's request for review on February 11, 2021. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court on April 16, 2021. (Tr. 1164). On April 26, 2022, the claim was remanded back to ALJ Collins by joint motion of the parties. (Tr. 1185-86).

A second hearing was held in Louisville, Kentucky on December 14, 2022. (Tr. 1128).

---

[2] The hearing was conducted telephonically because of the COVID-19 pandemic. (Tr. 40).

Claimant and her counsel appeared by telephone.[3] (Tr. 1130). Another impartial vocational expert participated in the hearing. (*Id*.).

During the hearing, Claimant testified to the following. She is under 50 years old with a high school education. (Tr. 1134-37). She previously worked as a special needs teacher's aide. (Tr. 1139). In that role, Claimant assisted the teacher in teaching, feeding the children, lifting kids, changing diapers, therapy with kids, keeping logs on the activities for the children every day. (*Id*.). She estimated lifting a maximum of one hundred pounds. (*Id*.). Claimant testified that she experiences skipping heartbeats, fatigue, brain fog, dizzy spells, low blood pressure, frequent urination, memory loss, and nausea, among other symptoms. (Tr. 1141-45). She reported using a roller walker and wheelchair. (Tr. 1146). After the onset date, she was diagnosed with Sjogren's Syndrome and Raynaud's Syndrome. (Tr. 1152).

ALJ Collins issued another unfavorable decision on March 31, 2023. (Tr. 1103). In doing so, he applied the Commissioner's five-step evaluation process for determining whether a claimant is disabled, 20 C.F.R. § 404.1520, and found as follows. First, Claimant has not engaged in substantial gainful activity since October 1, 2018, her alleged onset date. (Tr. 1109). Second, Claimant has the severe impairments of POTS, hypertension, Hashimoto's disease, asthma, and obesity. (*Id*.). Third, none of the Claimant's impairments or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 1111). Specifically, ALJ Collins found that Claimant's fibromyalgia was not a medically determinable impairment under Social Security Rule ("SSR") 12-2p because the record "does not confirm the claimant has the requisite number of tender point findings (or any tender point) and there is no evidence that medical doctors have excluded other impairments as required in SSR 12-

---

[3] This hearing was also held telephonically because of the COVID-19 pandemic. (Tr. 1130).

2p." (Tr. 1109). Fourth, through the date last insured, Claimant had the RFC to perform sedentary

work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following exceptions:

> [Claimant] can lift/carry ten pounds occasionally and less than ten pounds
> frequently, can sit six hours in an eight hour workday, can stand and/or walk two
> hours in an eight hour workday, occasional climbing of ramps and stairs, no
> climbing of ladders, ropes, and scaffolding, occasional balancing, stooping,
> kneeling, crouching, and crawling, frequent handling and fingering with the
> bilateral upper extremities, should avoid concentrated exposure to vibration,
> extreme heat, extreme cold, and humidity, should avoid concentrated exposure to
> pulmonary irritants including fumes, odors, dusts, gases, and poor ventilation, and
> should avoid all exposure to dangerous machinery and unprotected heights.

(Tr. 1112). While evaluating Claimant's RFC, ALJ Collins discussed the opinion of state-agency

medical consultants, who opined that Claimant was "capable of performing a limited range of work

at the light exertional level with no climbing of ladders, ropes, and scaffolding, frequent climbing

of ramps and stairs, frequent stooping and crawling, and avoidance of concentrated exposure to

workplace hazards." (Tr. 1116). ALJ Collins again found their opinions unpersuasive because they

> failed to give adequate consideration to all the claimant's severe physical
> impairments and the claimant's subjective complaints including fatigue, which
> would support a greater level of limitation than what was considered by state
> agency consultants and would support restricting the claimant to a sedentary
> exertional level of activity consistent with the [RFC] as set forth above.

(*Id*.). ALJ Collins also discussed Claimant's treating cardiologist's assistive device medical source

statement, which opined that Claimant's "continued use of walker or wheelchair allowed the

claimant to maintain her activities of daily living and was a reasonable, necessary, and accepted

standard of medical practice and treatment for her condition," among other things. (Tr. 1117). ALJ

Collins found this opinion unpersuasive because "it was not supported by or consistent with the

record." (*Id*.). Finally, through the date of last insured, ALJ Collins determined that Claimant was

unable to perform any past relevant work but, considering Claimant's age, education, work

experience, and RFC, there are jobs that exist in significant numbers in the national economy that

the claimant can perform. (Tr. 1119-20).

Again, ALJ Collins concluded Claimant was not under a disability, as defined in the Social Security Act, from October 1, 2018 through the date of his decision. (Tr. 1121). Claimant appealed ALJ Collins' decision. (Tr. 1293-94). Because the Appeals Council declined to assume jurisdiction (Tr. 1095-99), the Commissioner's decision became final on March 31, 2023. On October 26, 2023, Claimant appealed to this Court. (DN 1). Claimant's insured status expired on December 31, 2023. (Tr. 1295).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-4 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F. 2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id*. at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in

reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could support a decision as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## III. Analysis

Claimant challenges ALJ Collins' evaluation of her impairments throughout his opinion. First, Claimant asserts ALJ Collins failed to properly evaluate the opinion evidence of Kevin Parrott, M.D., Claimant's treating cardiologist, and failed to create a logical bridge between the evidence and the rejection of the opinion evidence, frustrating meaningful review. Second, Claimant argues ALJ Collins improperly found that Claimant's fibromyalgia was not a medically determinable impairment. Finally, Claimant asserts that the RFC is not supported by substantial evidence because it does not directly correspond to a medical opinion and, as a result, ALJ Collins had a duty to obtain additional evidence.

### A. Dr. Parrott's Assistive Device Medical Source Statement

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). In other words, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id*. (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

In this case, the new regulations for evaluating medical opinions evidence apply because Claimant filed her applications after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The new regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id*. ALJs now evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id*. (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination. *Id* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id*.

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id*. (c)(2). To further illuminate this distinction, "supportability" relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion; by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2).

Claimant believes that ALJ Collins' "lay analysis" of Dr. Parrott's medical opinion is insufficient, specifically arguing that ALJ Collins' finding that Claimant does not have the medical need for a handheld assistive device to ambulate is "not supported by substantial evidence where there is an uncontroverted medical opinion that the device is necessary and Claimant's medical

conditions, on their face, support the need for such a device." (DN 14, at PageID # 2142-44 (citing Tr. 1118)). Claimant points to medical evidence that contradicts ALJ Collins' finding and claims ALJ Collins "cherry-pick[ed] the record in an attempt to discredit [Claimant's] treating cardiologist's opinion . . . ." (DN 14, at PageID # 2144-46). The Commissioner, on the other hand, argues that ALJ Collins cited valid considerations in discounting Dr. Parrott's opinion and complied with the regulatory requirement to articulate how he considered the supportability and consistency factors when he found Dr. Parrott's opinion unpersuasive. (DN 17, at PageID #2174-77).

ALJ Collins evaluated the opinion of Dr. Parrott, who provided an assistive device medical source statement ("Dr. Parrott's opinion") and other medical statements.[4] (Tr. 1346-48). ALJ Collins noted that Dr. Parrott's opinion addressed Claimant's ability to function:

> Dr. Parrott noted they prescribed the claimant a walker in January of 2020 due to the claimant's symptoms of lightheadedness and dizziness, particularly when standing. They stated the claimant's continued use of walker or wheelchair allowed the claimant to maintain her activities of daily living and was a reasonable, necessary, and accepted standard of medical practice and treatment for her condition. It was further stated the use of the walker would be necessary for all surfaces, the claimant required the assistive device for ambulation, required the walker to maintain balance and stability, required it in order to complete activities of daily living, did not require an assistive device to go downstairs, and that the claimant could not carry anything while using the assistive device.

(Tr. 1117 (citing Tr. 1346-48)). ALJ Collins found Dr. Parrott's assertions regarding Claimant's use of a walker unpersuasive because "it was not supported by or consistent with evidence of record." (*Id*.).

ALJ Collins found that Dr. Parrott's opinion was not supported by his own treatment notes.

---

[4] Dr. Parrott also completed a functional capacity assessment (Tr. 360) and a letter to excuse Claimant from jury duty (Tr. 1342).

(Tr. 1117). ALJ Collins reasoned that Dr. Parrott's opinion was rendered in July 2020 and reported that he prescribed Claimant a walker in January 2020, yet "treatment records from July of 2020 do not consistently document [C]laimant's reported symptoms of lightheadedness and dizziness or any issue of syncope or near syncope which would support medical necessity of an assistive device." (Tr. 1117 (citing Tr. 815-50), *see* Tr. 1349-1440). In fact, ALJ Collins observed that Dr. Parrott's treatment records "did not consistently document the claimant using a walker until September of 2020, and again fail[ed] to document symptoms of lightheadedness or dizziness." (Tr. 1117-18 (citing Tr. 1349-40)).

ALJ Collins observed that Dr. Parrott's opinion was inconsistent with other medical evidence in the record. (Tr. 1118). Specifically, ALJ Collins distinguished Dr. Parrott's assertion that Claimant needed to use an assistive device to maintain her activities of daily living with other medical evidence in the record that "reported the claimant was mostly independent with self-care tasks, although she sat down to do tasks like dressing and hygiene and with frequent sitting and rest breaks could perform home management tasks." (Tr. 1117-18 (citing Tr. 2073-74)). Additionally, ALJ Collins noted that, while Claimant requested a walker as early as 2018 (Tr. 593), a prescription for one was not provided at that time. (Tr. 1117 (citing Tr. 580-703)).

Claimant does not address the new regulations for evaluating medical opinion evidence set forth in 20 C.F.R. § 404.1520c. Instead, she relies on SSR 96-9p to argue that Claimant established a medical need for an assistive device to ambulate through Dr. Parrott's opinion "because it explains why the device is needed and in what circumstances." (DN 14, at PageID # 2144). The issue here is that ALJ Collins did not adopt Dr. Parrott's opinion that the device was necessary, so this Court must evaluate this argument using the factors set forth in 20 C.F.R. § 404.1520c. As such, SSR 96-9p does not apply to this case.

Although Claimant did not specifically discuss 20 C.F.R. § 404.1520c, Claimant argues that ALJ Collins found Dr. Parrott's opinion did not satisfy the consistency and supportability factors based on ALJ Collins' own opinion that the record "does not sufficiently document symptoms of lightheadedness or dizziness." (DN 14, at PageID # 2144 (citing Tr. 1118)). Claimant argues that this "lay analysis" is "wholly insufficient" because it substitutes ALJ Collins' "lay opinion" for Dr. Parrott's opinion as a qualified treating cardiologist. (DN 14, at PageID # 2144). Claimant argues this was in error, as "[a]n ALJ 'may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.'" (DN 14, at PageID #2144 (quoting *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006))). Further, Claimant notes that ALJ Collins found that POTS and obesity are severe impairments during step two, and that the symptoms discussed in Dr. Parrott's opinion, including lightheadedness with prolonged standing, are all consistent with the symptoms of POTS. (DN 14, at PageID # 2145 (citing Tr. 360-61, 1109, 1347)).

Claimant alleges ALJ Collins undertook a selective review of the evidence. (DN 14, at PageID # 2144-46). Claimant argues that ALJ Collins' "cherry-picked view of the record, citing to a few instances where Plaintiff did not complain of light-headedness at the moment of examination, does not constitute substantial evidence where the ALJ failed to consider the entirety of the record in reaching his conclusion." (DN 14, at PageID # 2146 (citing *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014); *Germany-Johnson v. Comm'r of Soc Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008))).

The Commissioner argues that ALJ Collins did not deny that Claimant "occasionally presented with symptoms" and acknowledged Claimant's request for a wheelchair. (DN 17, at PageID # 2174-75 (citing Tr. 1117)). At the same time, ALJ Collins also observed that Dr. Parrott's

10

treatment notes "did not consistently document" symptoms of lightheadedness and dizziness. (*Id.*).

As for the consistency of Dr. Parrott's opinion with other evidence on the record, the

Commissioner argues that "[a]lthough Dr. Parrott opined that [Claimant] used a walker to maintain

her activities of daily living, the ALJ properly considered evidence that stated she could perform

her activities of daily living with other modifications, such as sitting down and taking breaks."

(DN 17, at PageID # 2175 (citing Tr. 1118)). Overall, the Commissioner asserts that ALJ Collins

met the substantial evidence standard because he considered the findings cited by Claimant and

other evidence on the record when he came to a different conclusion than Dr. Parrott. (DN 17, at

PageID # 2176 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Coppage*

*v. Berryhill*, No. 1:16-CV-00144-GNS, 2017 WL 8640926, at *4 (W.D. Ky. Aug. 11, 2017), *report*

*and recommendation adopted*, No. 1:16-CV-99144-GNS-HBB, 2018 WL 305336 (W.D. Ky. Jan.

5, 2018) ("an ALJ does not cherry-pick the record simply by resolving discrepancies in the record

against the claimant"))).

The Court finds that ALJ Collins properly evaluated Dr. Parrott's opinion and provided an

analysis that permits Claimant to understand why ALJ Collins neither found Dr. Parrott's opinion

supported by his own treatment notes nor consistent with the record evidence. ALJ Collins

considered the entirety of the record. (*see* Tr. 1117 ("[ALJ Collins] did not find Dr. Parrott's

assertions regarding the claimant's use of a walker to be persuasive, as it was not supported by or

consistent with evidence of record."). A reasonable mind could find, as ALJ Collins did, that Dr.

Parrott's inconsistent documentation of symptoms of lightheadedness and dizziness do not support

a finding that Claimant's use of a walker is medically necessary. (Tr. 1117). Further, a reasonable

mind could find, as ALJ Collins did, that evidence of Claimant's ability to perform activities of

daily living with modifications other than using a walker was not consistent with a finding that

Claimant's use of a walker is medically necessary. (Tr. 1117-18).

While reasonable minds may differ, the Court cannot reweigh the evidence and substitute its own judgment for that of ALJ Collins. *See Price v. Comm'r of Soc. Sec.*, 342 Fed. App'x 172, 174 (6th Cir. 2009). Even though he did not provide a comprehensive discussion of all of Dr. Parrott's treatment records and other medical evidence, ALJ Collins explained how he considered the supportability and consistency factors of Dr. Parrott's opinion. This explanation was coherent, as ALJ Collins acknowledged that Claimant occasionally presented with symptoms, expressed his concerns regarding inconsistent documentation, and bolstered his concerns with at least two other examinations conducted by Dr. Parrott as well as at least two other medical opinions and evidence of record. (Tr. 1117-18 (citing Tr. 580-703, 815-50, 1349-1440, 2065-94)). That alone is sufficient. *See* 20 C.F.R. § 404.1520c.

Accordingly, ALJ Collins' discussion of Dr. Parrott's opinion evidence can be understood to touch upon both the consistency and supportability factors, as required by the regulations. For these reasons, the Court finds ALJ Collins properly weighed Dr. Parrott's opinion and complied with the applicable regulations.

### B. ALJ Collins' Step Two Evaluation of Claimant's Medically Determinable Impairment

Claimant challenges ALJ Collins' step two finding that her fibromyalgia was not a severe medically determinable impairment. (DN 15, at PageID # 2147). Step two of the sequential evaluation process requires the claimant to establish the existence of a severe medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). A medically determinable impairment is an impairment that "result[s] from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §

404.1521. Medically determinable impairments "must be established by objective medical evidence from an acceptable medical source." *Id*. The claimant's statement of symptoms, a diagnosis, or a medical opinion will not establish the existence of a medically determinable impairment. *Id*. The regulations define "severe impairment" as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months," 20 C.F.R. §§ 404.1509, 416.909.

A person's fibromyalgia is medically determinable where it is diagnosed by a physician who provides evidence meeting one of two sets of criteria promulgated by the American College of Rheumatology ("ACR") in 1990 and 2010, and the diagnosis is not inconsistent with other record evidence. SSR 12-2p, 2012 WL 3104869, at 2 (July 25, 2012). The 1990 ACR criteria include:

(1) A history of widespread pain;

(2) At least 11 out of a possible 18 tender points on the body; and

(3) Evidence that other disorders that could cause the symptoms or signs were excluded.

*Id.* at 2-3. The 2010 ACR criteria include:

(1) A history of widespread pain;

(2) Repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and

(3) Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

*Id*. at 3.

At step two, ALJ Collins determined Claimant had several severe impairments, including: POTS, hypertension, Hashimoto's disease, asthma, and obesity. (Tr. 1109). However, ALJ Collins

13

did not find that Claimant's allegations of fibromyalgia were severe medically determinable impairments. (*Id*.). To support this conclusion, ALJ Collins provided the following analysis:

> In January 2020 the claimant complained of multiple joint pain to her primary care provider, including hip pain, feet pain, knee pain, low back pain, and elbow pain. On physical examination, the claimant was noted to have diffuse tenderness present with no edema. Laboratory studies were ordered at that time, revealing a positive ANA screen. In March of 2020 the claimant was seen by a rheumatology provider for complained [sic] of chronic joint pain, morning stiffness, deep bone pain, and myalgia. The claimant was noted to have diffuse tenderness to palpation on physical examination. The claimant further complained of dry eyes and mouth and reported significant color change in her fingers and toes in the cold. The claimant's presentation at that time was felt to be consistent with Sjogren's syndrome, Raynaud's, and fibromyalgia and the claimant was started on a trial of Plaquenil to address her complaints (Ex 9F, 11F). In September of 2020 at a rheumatology follow-up appointment the claimant reported her arthralgia symptoms were no different, although she had some worsening hand arthralgia. The claimant's Raynaud's was described as stable at the time and the prescribed medication for Sjogren's was discharged at the time with only supportive care and monitoring recommended. X-rays of the claimant's bilateral hands were unremarkable. In September of 2021 the claimant complained of continued widespread joint and muscle pain. It was felt the claimant's Sjogren's and Raynaud's were stable at that time. In September of 2022, the claimant's Sjogren's was described as about the same. A trial of medication at a very low dosage was recommended at that time (Exhibit 15F). The undersigned finds the record contains no evidence showing the claimant exhibits the symptoms associated with fibromyalgia. Specifically, the record does not confirm the claimant has the requisite number of tender point findings (or any tender points) and there is no evidence that medical doctors have excluded other impairments as required in SSR 12-2p. Thus, the diagnosis of fibromyalgia does not comport with the requirements set forth in SSR 12-2p or 96-4p that require an 'impairment' must result from anatomical, physiological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Consequently, the undersigned finds this impairment does not meet the requirements set forth by the Social Security Administration needed for the determination that fibromyalgia is a medically determinable impairment.

(Tr. 1109-10).

Claimant argues ALJ Collins erred by failing to find her fibromyalgia was a medically determinable impairment. (DN 15, at PageID # 2147). Claimant specifically finds error in ALJ

Collins' evaluation of the 2010 ACR criteria. Claimant argues that the third 2010 ACR criteria was satisfied because Claimant's medical providers ruled out other impairments and the 2010 ACR criteria does not require that Claimant show evidence of tender points in order to establish a medical impairment of fibromyalgia. (DN 15, at PageID # 2148 (citing SSR 12-2p, 2012 WL 3104869, at 3 (July 25, 2012))). It is true that evidence of tender points is not required for the 2010 ACR criteria. Still, it is required for the 1990 ACR criteria. Claimant acknowledged the ALJ is required to consider both criteria. (DN 14, at PageID # 2148). Thus, while it does not apply to the 2010 ACR criteria, ALJ committed no error in considering whether Claimant showed evidence of eleven tender points to establish a medical impairment of fibromyalgia. The Court will only assess ALJ Collins' analysis using the 2010 ACR criteria here, however, because the analysis pertaining to the 1990 ACR criteria is not in dispute.

Claimant asserts that the evidence she submitted satisfies the 2010 ACR Criteria. (DN 14, at PageID # 2149). As to the first element of the 2010 ACR Criteria, Claimant alleges that ALJ Collins incorrectly found that there is no evidence of clinical signs of fibromyalgia and that there is, in fact, "substantial evidence of a history of widespread pain." (DN 14, at PageID # 2149 (citing Tr. 805, 1006, 1510, 1921)). Claimant argues findings by her treating rheumatologist, Charles F. Moore, Jr., M.D., satisfies the second element of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions. Specifically, Dr. Moore noted that Claimant "has diffused pain, myalgia, dysesthesia in the setting of chronic sleep deprivation" and that she "describes paresthesia's and irritable bowel symptoms," which is "all classic for underlying fibromyalgia which is commonly seen in association with both [Sjogren's] syndrome and POTS." (DN 14, at PageID # 2149 (citing Tr. 803; referencing Tr. 491-91, 709, 734, 803-04, 1419, 1921)). Finally, Claimant believes she satisfied the third element because she "provided

evidence that other disorders that could cause the symptoms were excluded," specifically evidence that "Dr. Moore ordered numerous laboratory studies to exclude other conditions, including all of the tests mentioned in SSR 12-2p, such as complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor." (DN 14, at PageID # 2150 (citing Tr. 805-06)). Importantly, Claimant does not address whether the laboratory studies did, in fact, exclude other conditions. Nevertheless, Claimant asserts that ALJ Collins "inaccurately found that [Dr. Moore] failed to rule out other conditions." (DN 14, at PageID # 2150). In sum, Claimant believes ALJ Collins' findings are "contrary to the evidence of record and are wholly unsupported." (DN 14, at PageID # 2150).

ALJ Collins' errors at step two, Claimant explains, led to his failure to assess any corresponding RFC limitations. (DN 15, at PageID # 2150-51). Thus, Claimant argues that the RFC is incomplete and the vocational expert testimony is not supported by substantial evidence because they do not include limitations arising from fibromyalgia. (DN 15, at PageID # 2151 (citing *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987))). As a result, Claimant asserts that the RFC is not supported by substantial evidence, resulting in harmful error to the Claimant. (DN 15, at PageID # 2151).

The Commissioner does not dispute whether the second and third 2010 SSR criteria were satisfied. Focusing on the third criteria, the Commissioner argues that ALJ Collins applied both the 1990 and 2010 ACR Criteria, as he concluded that Claimant "failed to meet diagnostic criteria of fibromyalgia, because there was no evidence that medical doctors excluded other impairments as required under the 1990 and 2010 ACR criteria." (DN 17, at PageID # 2179 (citing Tr. 1109)).

The Commissioner asserts that ALJ Collins considered treatment records from Dr. Moore, including those in which Dr. Moore ordered and reviewed laboratory results, in support of his

conclusion that fibromyalgia did not satisfy the criteria outlined in SSR 12-2p. (DN 14, at PageID # 2178-79 (citing Tr. 1109-10)). Indeed, ALJ Collins noted that Dr. Moore did *not* exclude other impairments when he reviewed laboratory test results in March 2020 and, in fact, concluded that Claimant's presentation was consistent with Sjogren's syndrome, Raynaud's syndrome, and fibromyalgia, and listed her primary diagnosis as Sjogren's syndrome. (DN 17, at PageID # 2178 (citing Tr. 803-10, 1109, 1460)).

ALJ Collins also discussed Dr. Moore's notes from his September 2021 appointment with Claimant, where Dr. Moore noted that Claimant's Sjogren's syndrome and Raynaud's syndrome were "stable," and his 2022 appointment with Claimant, where Dr. Moore assessed Claimant with "primary" Sjogren's syndrome, POTS, and fibromyalgia. (DN 17, at PageID # 2178 (citing Tr. 1109, 1511, 1527)). The Commissioner asserts that, based on Dr. Moore's assessment, ALJ Collins "concluded that Sjogren's syndrome and Raynaud's syndrome were non-severe impairments and there was 'no evidence that medical doctors have excluded other impairments as required in SSR 12-2p.'" (DN 17, at PageID # 2178 (quoting Tr. 1109-10)). Thus, because other impairments were not excluded, the Commissioner argues that ALJ Collins' finding that Claimant did not meet either the 1990 or 2010 ACR criteria was reasonable and supported by substantial evidence on the record. (DN 17, at PageID # 2179).

ALJ Collins's step two finding that Claimant's fibromyalgia was not a severe medically determinable impairment because it did not meet the 1990 or 2010 ACR criteria is supported by substantial evidence on the record. ALJ Collins considered Dr. Moore's medical evidence to inform his conclusion that other impairments such as Sjogren's syndrome and Raynaud's syndrome were not excluded. A reasonable mind could conclude, as ALJ Collins did, that fibromyalgia is not a severe medically determinable impairment when Claimant's presentation of

symptoms is consistent with Sjogren's syndrome, Raynaud's syndrome, and fibromyalgia, and thus other disorders which could cause repeated manifestations of Fibromyalgia symptoms, signs, or co-occurring conditions were not excluded. This Court finds that no errors occurred at step two. As a result, Claimant's argument that the RFC is incomplete and the vocational expert testimony is not supported by substantial evidence because they do not include limitations arising from fibromyalgia likewise fails. The RFC is analyzed further in the following section.

### C. ALJ Collins' Failure to Develop the Record

ALJ Collins considered the medical opinion of Dr. Parrott, Claimant's treating cardiologist. (Tr. 1117). As discussed *supra*, ALJ reasonably rejected Dr. Parrott's opinion that a walker was medically necessary. (*Id.*). ALJ Collins was also not persuaded by Dr. Parrott's 2019 opinion that Claimant could not perform the exertional demands of sedentary work and had additional non-exertional limitations. (Tr. 1117; *see* Tr. 360-61). Further, Dr. Collins was not persuaded by Dr. Parrott's statement regarding Claimant's ability to perform jury duty, finding that the statement was written after Dr. Moore, a rheumatology provider, declined to write such a letter, and that Dr. Parrott's statement did not provide any specific work-related limitations or insight into Claimant's functional ability. (Tr. 1118). Additionally, ALJ Collins noted that State agency medical consultants opined that Claimant could perform light work with additional non-exertional limitations. (Tr. 1116 (citing Tr. 87-99, 101-13, 115-27, 129-41)). ALJ Collins found this unpersuasive, reasoning that the overall evidence in the record supported a greater level of limitations. (Tr. 1116). In short, ALJ Collins found Claimant more restricted than provided by the state agency medical consultants, but not as restricted as opined by Dr. Parrott.

Claimant argues that ALJ Collins failed to develop the record when he rejected every medical opinion on the record and made the "relatively rare" RFC determination restricting

Claimant to sedentary work and other non-exertional limitations "by reviewing the raw medical data and crafting them out of whole cloth." (DN 14, at PageID # 2152-54 (citing Tr. 1112; SSR 96-9p, 1996 WL 374185, at 1 (July 2, 1996))). Asserting that ALJ Collins interpreted "raw medical data" without a directly corresponding medical opinion, Claimant contends that ALJ Collins violated his duty to develop the record. (*Id*.).

In response, Commissioner argues that ALJ Collins' RFC reasonably accounted for Claimant's limitations that were supported by the record as a whole and that ALJ Collins is not required to base his RFC on a medical opinion. (DN 17, at PageID # 2180-81). The Commissioner highlights that the Sixth Circuit "has consistently held that the ALJ's RFC finding 'does not need to correspond to a particular physician's opinion.'" (DN 17, at PageID # 2181 (citing *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401-02 (6th Cir. 2018))).

### 1. Whether ALJ Collins Had a Heightened Duty to Develop the Record

While an ALJ must ensure that every claimant receives a "full and fair hearing," the ultimate burden of proving entitlement to benefits lies with the claimant. *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). Although social security proceedings are inquisitorial rather than adversarial, that does not mean that the ALJ advocates for the claimant. *Id*. ("Promoting the claimant's case, of course, is not the ALJ's obligation. The ALJ, remember, is a neutral factfinder, not an advocate.").

It is only under "extreme circumstances," such as when the claimant appears without counsel, that the ALJ could be said to have a "special duty" to help develop the record. *Id*. at 563-64 (discussing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)). Claimant argues that ALJ Collins erred by not developing the record "[g]iven the volume

of evidence in this matter and the severely restrictive nature of [Claimant's] impairments." (DN 14, at PageID # 2153). But the volume of evidence and the alleged restrictive nature of her impairment does not show that Claimant's case was an "extreme" situation in which ALJ Collins had a heightened duty to develop the record. Claimant, who was represented at all stages of the application and appeals process, informed ALJ Collins that there were no outstanding records. (Tr. 1133). The record included Claimant's relevant medical history, Claimant's testimony, vocational expert testimony, reports from Claimant's physicians, and findings of State agency doctors, all of which ALJ Collins considered in his decision. Thus, her argument fails.

2. Whether ALJ Collins Was Required to Obtain a Directly Corresponding Medical Opinion

As discussed *supra*, the RFC is the most a claimant can do despite her physical and mental limitations. An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. 20 C.F.R. § 404.1545(a)(3). The new regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. 20 C.F.R. § 404.1520c.

An ALJ is not required to base an RFC on a medical opinion. *See Tucker*, 775 F.App'x at 226 ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding."); *Mokbel-Aljahmi*, 723 F. App'x at 401-02 ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."). Further, "the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw*, 803 F.2d at 214 (citing 20 C.F.R. § 416.917(a)). While the ALJ has a duty to conduct a "full inquiry," that duty "does not

20

require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable to administrative law judge to make the disability decision." *Landsaw*, 803 F.2d at 214 (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)); *see also* 20 C.F.R. § 416.919a(b)(1) (an ALJ may be required to obtain a consultative examination when "[t]he additional evidence needed is not contained in the records of [the claimant's] medical sources")).

Claimant points to the so-called "*Deskin* rule" in support of her argument that ALJ Collins should have obtained a medical opinion to support his RFC determination. (DN 16, at PageID # 5152 (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp. 2d 908, 911 (N.D. Ohio 2008))). In the years following *Deskin*, district courts within the Sixth Circuit have narrowed this rule to apply only (1) where an ALJ made an RFC determination based on no medical source opinion; or (2) where an ALJ made an RFC error based on an outdated source opinion that did not include consideration of a critical body of objective evidence. *Hancock v. Comm'r of Soc. Sec.*, 2022 WL 801278, at *4 (W.D. Ky. Mar. 15, 2022) (citing *Branscum v. Berryhill*, 2019 WL 475013, at *11 (E.D. Ky. Feb. 6, 2019)). Notably, however, *Deskin* is not controlling and has received mixed reviews in its own district. *See, e.g., Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 U.S. Dist. LEXIS 18644, at *4 (N.D. Ohio Mar. 1, 2010) ("The Court finds, however, that *Deskin* . . . is not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals."); *Berrier v. Comm'r of Soc. Sec.*, No. 3:20-cv-10655-JZ, 2021 U.S. Dist. LEXIS 251442, at *20 (N.D. Ohio Sep. 10, 2021) (citing cases that followed *Deskin* and those that did not), *report and recommendation adopted*, No. 3:20 CV 1655, 2022 U.S. Dist. LEXIS 11780 (N.D. Ohio Jan. 21, 2022).

This Court addressed a case with a similar fact pattern in *Charles W. v. Comm'r of Soc.*

*Sec*, which the Commissioner cites in his brief. 3:22-CV-00312-DJH-CHL, 2023 WL 5011745, at *10 (W.D. Ky. July 5, 2023), *report and recommendation adopted, Washburn v. Comm'r of Soc. Sec.*, 2023 WL 5003585 (W.D. Ky. Aug. 4, 2023). There, the claimant argued that the ALJ's RFC finding was invalid because it was not based on any medical opinion. *Id*. at *9. However, the record contained several medical opinions, none of which Claimant alleged were outdated and some of which the ALJ found persuasive. *Id*. at *10. This Court found that neither of the two scenarios in which the *Deskin* rule applies existed in the case because the ALJ provided a "sufficient discussion of both the medical evidence of record and the opinion evidence in the record to support his RFC determination." *Id*. at *10-11.

Here, as in *Charles W.*, neither of the *Deskin* circumstances apply. ALJ Collins relied on the whole record, including medical opinions such as reports from Claimant's physicians and findings of state agency doctors. (Tr. 1112). Further, Claimant informed ALJ Collins that there were no outstanding records. (Tr. 1133). ALJ Collins proceeded to add greater restrictions to the exertional and postural limitations than what was recommended by the State agency physicians and lesser restrictions than what was recommended by the treating physicians. ALJ Collins limited Claimant to sedentary work except that she can "lift/carry ten pounds occasionally and less than ten pounds frequently, can sit six hours in an eight-hour workday, can stand and/or walk two hours in an eight hour workday." (Tr. 1112). ALJ Collins determined that Claimant could occasionally climb ramps and stairs, but could not climb ladders, ropes, and scaffolding. (*Id*.). He found that Claimant could occasionally balance, stoop, kneel, crouch, and crawl and frequently handle and finger with the bilateral upper extremities. (*Id*.). ALJ Collins also added environmental limitations, including that she should "avoid concentrated exposure to vibration, extreme heat, extreme cold, and humidity, should avoid concentrated exposure to pulmonary irritants including fumes, odors,

dusts, gases, and poor ventilation, and should avoid all exposure to dangerous machinery and unprotected heights." (*Id.*).

There is no evidence that ALJ Collins interpreted "raw medical data." While ALJ Collins considered medical data, he did not consider it in a vacuum. In addition to the medical opinions, ALJ Collins considered Claimant's relevant medical history, Claimant's testimony, and vocational expert testimony. (Tr. 1112-16). Further, ALJ Collins considered and weighed the relevant opinion evidence for its persuasiveness as he is required to do by the applicable regulations. 20 C.F.R. § 416.920c. Although ALJ Collins found all the medical opinions unpersuasive, portions of the opinions support ALJ Collins' RFC determination in a way that makes *Deskins* inapplicable. For example, ALJ Collins agreed with the State agency medical consultants that Claimant could not climb ladders, ropes, and scaffolding. (Tr. 1112, 1116 (citing Tr. 87-99, 101-13, 115-27, 129-41)). Additionally, ALJ Collins agreed with Dr. Parrott that Claimant could occasionally balance, stoop, kneel, crouch, and crawl and that she should avoid concentrated exposure to extreme heat, extreme cold, and high humidity. (Tr. 1112, 1116-17 (citing Tr. 360-61)).

Overall, the Court finds that ALJ Collins provided a sufficient discussion of both the medical evidence of record and the opinion evidence in the record to support his RFC determination. In so finding, ALJ Collins did not erroneously "play doctor" or make his own independent medical findings.

Even if ALJ Collins erred in analyzing the state agency findings, the error – which benefitted Claimant – would be harmless at best. *See Laney v. Comm'r of Soc. Sec.*, No. 5:21-CV-01290-CEH, 2022 U.S. Dist. LEXIS 107921, at *20-21 (N.D. Ohio June 16, 2022) ("The Court will not fault the ALJ for finding more restrictions than the state agency reviewers opined[.]"). Claimant is in no position to assert, as error, something that benefitted her.

For all these reasons, the Court finds that ALJ Collins did not have a heightened duty to develop the record and was not required to seek additional medical evidence for Claimant.

<u>IV. Recommendation</u>

ALJ Collins' decision is supported by substantial evidence in the record and comports with the applicable regulations; accordingly, the Court **ORDERS** the Commissioner's decision be **AFFIRMED**. This is a final and appealable Order and there is no just cause for delay.

Copies:        Counsel of Record